## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

LANETTE N. ROMERO,
on behalf of K.S.Q.,

              Plaintiff,

v.                                      Case No. 6:19-cv-02381-ACC-JRK

ANDREW M. SAUL,
Commissioner of Social Security,

              Defendant.

_____

## REPORT AND RECOMMENDATION[1]

## I.   Status

Lanette N. Romero, on behalf of her minor son, K.S.Q., is appealing the Commissioner of the Social Security Administration's ("SSA's") final decision finding that as of June 20, 2016, K.S.Q. was no longer disabled and therefore ineligible for continued child's supplemental security income ("SSI"). For purposes of this Report and Recommendation, the designation "Claimant"

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Order (Doc. No. 3), No. 8:20-mc-100-SDM, entered October 29, 2020, at 6.

refers to the minor child, K.S.Q., who was ten years old (a "school-aged child") as of June 20, 2016, and the designation "Plaintiff" refers to his mother, Ms. Romero. See, e.g., Tr. at 105 (indicating date of birth). Claimant's alleged disability is the result of attention deficit disorder and speech delay. Transcript of Administrative Proceedings (Doc. No. 18; "Tr." or "administrative transcript"), filed February 21, 2020, at 104. The original finding of disability was made on June 30, 2009, was applicable as of April 4, 2009, and was based on "Speech/Language delay." Tr. at 13, 16 (emphasis omitted).[2] In a subsequent determination dated February 16, 2012, the SSA found that Claimant's disability continued. Tr. at 13.[3]

Thereafter, the SSA conducted another review of Claimant's disability status, see 20 C.F.R. § 416.994a(a), and made an initial determination in June 2016 that Claimant was no longer disabled, Tr. at 103, 104, 106-11; see also Tr. at 13. On reconsideration, the SSA made the same determination. Tr. at 105. The matter was referred to a State Agency Disability Hearing Officer, who held a hearing on August 2, 2017 and then issued a decision on August 11, 2017 upholding the initial determination. Tr. at 119-29.

---

[2]    The June 30, 2009 determination is not part of the administrative transcript.

[3]    The February 16, 2012 determination is not part of the administrative transcript.

On February 28, 2018, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Claimant and Plaintiff, both of whom proceeded pro se. See Tr. at 65-101. The ALJ issued a Decision on December 3, 2018, finding that Claimant's disability ended on June 20, 2016 and that he had not become disabled again through the date of the Decision. Tr. at 13-33.

Plaintiff, on behalf of Claimant, requested review of the Decision by the Appeals Council. Tr. at 186. On November 7, 2019, the Appeals Council denied the request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On December 18, 2019, Plaintiff commenced this action on behalf of Claimant under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

Plaintiff makes one argument on appeal: "The [ALJ] failed to apply the correct legal standards when he failed to weigh evidence supporting marked limitations in functioning and then cited that evidence when finding less severe limitations." Plaintiff's Brief (Doc. No. 22; "Pl.'s Br."), filed April 21, 2020, at 2, 12 (emphasis omitted). Specifically, Plaintiff challenges the ALJ's evaluation of the following: 1) an Individual Educational Plan ("IEP"), completed on October 18, 2017; 2) a "Teacher Questionnaire" completed by Claimant's fifth-grade

English language arts teacher,[4] on May 15, 2017; 3) a psychoeducational evaluation conducted on August 25, 2016 by Cara Walls, Ed.S.; and 4) the opinions of the non-examining state agency medical consultants. See Pl.'s Br. at 12-18.[5] On June 19, 2020, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 23; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective filings, the undersigned finds the Commissioner's final decision is due to be affirmed.

## II.   The Disability Evaluation Process for Children

An individual under the age of eighteen is considered disabled if he or she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; see 42 U.S.C. § 1382c(a)(3)(C)(i). In cases for termination or cessation of benefits, "the

---

[4]     The signature of the English language arts teacher is illegible. See Tr. at 273. The Teacher Questionnaire was also signed by Judy Kerns, the Exceptional Student Education ("ESE") Resource Specialist, see Tr. at 273, but it appears it was the English language arts teacher who completed the questionnaire, see Tr. at 266 (indicating teacher completing the questionnaire sees Plaintiff for English language arts).

[5]     Plaintiff does not name the state agency medical consultants, but it appears she refers to the four non-examining physicians/psychologists who reviewed the record and concluded Claimant's impairments are severe but do not meet, medically equal, or functionally equal any of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1. See Tr. at 448-53, 470-75.

burden is on the Commissioner to prove that the [child] is no longer disabled as of the cessation date because the [child] had experienced 'medical improvement.'" Gillett v. Colvin, 237 F. Supp. 3d 1285, 1292 (M.D. Fla. 2017) (citing Simpson v. Schweiker, 691 F.2d 966, 969 (11th Cir. 1982), superseded by statute on other grounds as stated in Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991)); see also Huie v. Bowen, 788 F.2d 698, 705 (11th Cir. 1986); Carbonell v. Comm'r of Soc. Sec., No. 6:11-cv-400-ACC-GJK, 2012 WL 1946070, at *3-4 (M.D. Fla. May 11, 2012), report and recommendation adopted, No. 6:11-cv-400-ACC-GJK, 2012 WL 1946072 (M.D. Fla. May 30, 2012).

In deciding whether an individual under the age of eighteen is no longer disabled, an ALJ follows the three-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"). This sequential inquiry asks, in substance, whether (1) the child has experienced medical improvement; (2) the child's impairment(s) at the time of the most recent favorable decision still meet or medically equal the Listing they met or equaled at that time; and (3) the child's current impairment(s) (including any impairments not present at the time of the most recent favorable decision) are disabling under 20 C.F.R. § 416.924. See 20 C.F.R. § 416.994a(b). At step three, the ALJ must determine as appropriate whether the child has a severe impairment or combination of impairments and whether the impairment(s) meet, medically equal, or functionally equal any of the impairments set forth in the Listings. See 20

C.F.R. § 416.994a(b)(3); 20 C.F.R. § 416.924(a)-(d); see also Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1278-79 (11th Cir. 2004) (explaining the evaluation process for children); Banks for Hunter v. Comm'r, Soc. Sec. Admin., 686 F. App'x 706, 712 (11th Cir. 2017); Beavers v. Soc. Sec. Admin., Comm'r, 601 F. App'x 818, 820-21 (11th Cir. 2015).

Even if the child's limitations do not medically equal the Listings, "the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings." Shinn, 391 F.3d at 1278. To make that determination, "the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities," using "six major domains of life[.]" Id. Those domains are:

    (i)     Acquiring and using information;
    (ii)    Attending and completing tasks;
    (iii)   Interacting and relating with others;
    (iv)    Moving about and manipulating objects;
    (v)     Caring for [one]self; and,
    (vi)    Health and physical well-being.

20 C.F.R. § 416.926a(b)(1); see also Banks for Hunter, 686 F. App'x at 712. "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked limitations in two of the domains [above], or an extreme limitation in one domain.'" Shinn, 391 F.3d at 1279 (alteration in original) (quoting 20 C.F.R. § 416.926a(d) and citing 20 C.F.R. § 416.925(a)).

### III.   The ALJ's Decision

Here, the ALJ found as follows:

1.    The most recent favorable medical decision finding that [Claimant] continued to be disabled is the determination dated February 16, 2012. This is known as the "comparison point decision" [("CPD")].

2.    At the time of the CPD, [Claimant] had the following medically determinable impairment: Speech/Language delay. This impairment was found to functionally equal the [L]isting[s].

Tr. at 16 (emphasis and citations omitted).

The ALJ then followed the three-step sequential inquiry. At step one, the ALJ found that "[m]edical improvement occurred as of June 20, 2016." Tr. at 17 (emphasis and citation omitted). Next, at step two, the ALJ found that "[s]ince June 20, 2016, the impairments that [Claimant] had at the time of the CPD have not functionally equaled the [Listings]." Tr. at 18 (emphasis and citation omitted).

At step three, the ALJ found that "[s]ince June 20, 2016, [Claimant] has had the following severe impairments: autism; attention deficit disorder (ADD); language delay; history of asthma and eczema." Tr. at 24 (emphasis and citation omitted). The ALJ then determined that "[s]ince June 20, 2016, [Claimant] has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 25 (emphasis and citation omitted). The ALJ found that

"[s]ince June 20, 2016, [Claimant] has not had an impairment or combination of impairments that functionally equals the [L]istings." Tr. at 26 (emphasis and citation omitted).

In terms of the six major domains of life, the ALJ ascertained that since June 20, 2016, Claimant has had: "less than marked limitation[s] in acquiring and using information," Tr. at 28 (emphasis omitted); "less than marked limitation[s] in attending and completing tasks," Tr. at 29 (emphasis omitted); "less than marked limitation[s] in interacting and relating with others," Tr. at 30 (emphasis omitted); "no limitation in moving about and manipulating objects and none has been alleged," Tr. at 31 (emphasis omitted); "less than marked limitation[s] in the ability to care for himself," Tr. at 32 (emphasis omitted); and "less than marked limitation[s] in health and physical well-being," Tr. at 32 (emphasis omitted).

Accordingly, the ALJ concluded that Claimant's "disability ended as of June 20, 2016, and [Claimant] has not become disabled again through the date of th[e D]ecision." Tr. at 33 (emphasis and citation omitted).

## IV.   Standard of Review

This Court reviews the Commissioner's final decision as to cessation of disability pursuant to 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245

F.3d 1274, 1278 (11th Cir. 2001) (citing <u>Falge v. Apfel</u>, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Falge</u>, 150 F.3d at 1322 (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); <u>see also</u> <u>Biestek v. Berryhill</u>, 139 S.Ct. 1148, 1154 (2019); <u>Goode v. Comm'r of Soc. Sec.</u>, 966 F.3d 1277, 1280 (11th Cir. 2020). The key is "whether the [Commissioner's] finding of improvement to the point of no disability is supported by substantial evidence." <u>Simpson</u>, 691 F.2d at 969. It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); <u>see also</u> <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988); <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam); <u>see also</u> <u>Noble v. Comm'r of Soc. Sec.</u>, 963 F.3d 1317, 1323 (11th Cir. 2020).

## V.   Discussion

As noted, Plaintiff challenges the ALJ's evaluation of the opinions in the IEP, the Teacher Questionnaire, and Ms. Walls's evaluation, as well as the non-examining opinions of the state agency medical consultants. Specifically, Plaintiff takes issue with the ALJ's reliance on these opinions in finding medical improvement and evaluating Claimant's limitations in five of the six domains of life.[6]

For ease of discussion, the undersigned initially sets out the applicable law. Then, the parties' arguments as to each opinion and the ALJ's treatment of each opinion are summarized in turn. Lastly, the undersigned addresses whether the ALJ's Decision is supported by substantial evidence.

### A.   Applicable Law

#### 1.   The Domains of Life

The domain of acquiring and using information is used to consider how well a child acquires and learns information, and how well the child uses that information. 20 C.F.R. § 416.926a(g). School-aged should be able to: "learn to read, write, and do math"; "discuss history and science"; and "use increasingly complex language (vocabulary and grammar) to share information and ideas

---

[6]     Plaintiff does not appear to take issue with the ALJ's evaluation of Claimant's limitations in the domain of health and physical well-being.

with individuals or groups, by asking questions and expressing [their] own ideas, and by understanding and responding to the opinions of others." 20 C.F.R. § 416.926a(g)(2)(iv).

The domain of attending and completing tasks is used to consider how well the child can focus and maintain attention, and how well the claimant begins, carries through, and finishes activities, including the pace at which those activities are performed. 20 C.F.R. § 416.926a(h). School-aged children should be able to: "focus [their] attention in a variety of situations in order to follow directions"; "remember and organize [their] school materials"; "complete classroom and homework assignments"; "concentrate on details and not make careless mistakes in [their] work (beyond what would be expected in other children [their] age who do not have impairments)"; "change [their] activities or routines without distracting [themselves] or others"; "stay on task and in place when appropriate"; "sustain [their] attention well enough to participate in group sports, read by [themselves], and complete family chores"; and "complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation." 20 C.F.R. § 416.926a(h)(2)(iv).

The domain of interacting and relating with others is used to consider how well the child initiates and sustains emotional connections with others, develops and uses the language of the community, cooperates with others,

complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). School-age children should be able to: "develop more lasting friendships with children who are [their] age"; talk to people of all ages; share ideas; tell stories; and "speak in a manner that both familiar and unfamiliar listeners readily understand." 20 C.F.R. § 416.926a(i)(2)(iv). They should "begin to understand how to work in groups to create projects and solve problems," and they "should have an increasing ability to understand another's point of view and to tolerate differences." Id.

The domain of moving about and manipulating objects is used to consider how well the child can move his or her body from one place to another and move and manipulate things. 20 C.F.R. § 416.926a(j). School-aged children should be able to: "move at an efficient pace about [their] school, home, and neighborhood"; "enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching and hitting balls in informal play or organized sports"; and "do things like use many kitchen and household tools independently, use scissors, and write." 20 C.F.R. § 416.926a(j)(2)(iv).

The domain of caring for oneself is used to consider how well the child can "maintain a healthy emotional and physical state." 20 C.F.R. § 416.926a(k). School-aged children "should be independent in most day-to-day activities . . . although [they] may still need to be reminded sometimes to do these routinely." 20 C.F.R. § 416.926a(k)(2)(iv). They should also begin to:

"recognize that [they] are competent in doing some activities and that [they] have difficulty with others"; "develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior"; "demonstrate consistent control over [their] behavior"; and "imitate more of the behavior of adults [they] know." Id. School-aged children should also be able to "identify those circumstances when [they] feel good about [themselves] and when [they] feel bad" and "to avoid behaviors that are unsafe or otherwise not good for [them]." Id.

### 2.  Medical Opinions[7]

The Regulations establish a hierarchy among medical opinions[8] that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. § 416.927. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating

---

[7]     On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017); see also 82 Fed. Reg. 15, 132 (Mar. 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 8244). Because Claimant filed his claim before that date, the undersigned cites the rules and Regulations that are applicable to the date the claim was filed.

[8]     "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1); see also 20 C.F.R. § 416.902 (defining "[a]cceptable medical sources"); 20 C.F.R. § 416.913(a).

health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019).

Moreover, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. § 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. § 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

**B.  Parties' Arguments and ALJ's Treatment of Opinions at Issue**

**1.  The IEP**

Plaintiff contends the ALJ erred in not stating the weight he assigned to the October 2017 IEP. Pl.'s Br. at 13. Plaintiff argues that although the IEP "supported marked limitations" in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, the ALJ relied on it in finding less than marked limitations in those domains. Id. at 13-15.

Responding, Defendant asserts the ALJ gave "significant consideration" to the IEP. Def.'s Mem. at 9. Defendant contends that "[a]s the ALJ discussed, Claimant's IEP showed some limitations, but less than marked limitations in the functional domains." Id. at 13.

In evaluating Claimant's limitations in acquiring and using information, the ALJ accurately noted that according to the IEP, Claimant is "eager to learn" and "had an A-B average in classes," but he has "difficulty putting his thoughts on paper." Tr. at 29;[9] see Tr. at 480, 482.

In assessing Claimant's limitations in attending and completing tasks, the ALJ acknowledged the IEP's report that Claimant has "difficulty staying focused on [a] current subject and raising [his] hand to speak"; that "once

---

[9]     The Decision does not refer to the IEP by name, but it cites Exhibit 23F, which contains the IEP. Tr. at 29-31; see Tr. at 478-93 (Exhibit 23F).

distracted, he would draw and needed prompting to put his drawings away and get back on task"; and that "[h]e was not completing work in a timely manner, needing prompting to stay on task." Tr. at 30 (citation omitted); <u>see</u> Tr. at 480.

In considering Claimant's limitations in interacting and relating with others, the ALJ accurately noted the IEP states that Claimant's "behavior does not impede his learning"; that "[h]e ha[s] been working on social language skills, which include[s] rules for conversation, sharing information, using appropriate eye contact, filtering thoughts and problem solving in social situations"; that "[h]e enjoy[s] participating in small group discussions"; that he "ask[s] questions when needed"; and that "he work[s] well with others." Tr. at 31 (citations omitted); <u>see</u> Tr. at 478, 480. The ALJ also noted the statements made by Claimant's ESE teacher, Yizette Colon, describing Claimant as "polite and well[-]behaved, respectful to adults and peers." Tr. at 31; <u>see</u> Tr. at 490.

## 2.   The Teacher Questionnaire (School Year 2016-17)

Plaintiff contends the ALJ "mischaracterized" the opinions in the May 2017 Teacher Questionnaire, "did not resolve how [they] impacted his findings, and did not account for [them] when making his findings." Pl.'s Br. at 16-17. Plaintiff asserts the teacher's opinions "supported a series of very serious problems, serious problems, and obvious problems in" the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for

oneself. Id. at 16. Despite this, argues Plaintiff, the ALJ "relied" on the Teacher Questionnaire in finding less than marked limitations in these domains. Id.

Responding, Defendant contends the ALJ "reasonably considered" and "properly analyzed" the Teacher Questionnaire. Def.'s Mem. at 16 (citation omitted). According to Defendant, because the Teacher Questionnaire "is not adequate to determine any ratings in the functional domains and none of [the] ratings are 5/5, [the Teacher Questionnaire] is consistent with a finding of less than marked [limitations] in all of the domains." Id. at 17 (citation omitted).

The Teacher Questionnaire sets forth a number of activities under each domain and asks the teacher to evaluate whether the student has problems with any of the activities by assigning one of the following ratings to each activity: "no problem"; "a slight problem"; "an obvious problem"; "a serious problem"; or "a very serious problem." Tr. at 267-71 (capitalization omitted).

In evaluating Claimant's limitations in acquiring and using information, the ALJ noted the teacher's opinions in the Teacher Questionnaire that Claimant has "an obvious problem with reading and comprehending written material[,] providing organized oral explanations and adequate descriptions[, and] expressing ideas in written form"; that he has "no problem understanding school and content vocabulary"; and that he has only "slight problem[s] with the

remaining functions of this domain." Tr. at 29;[10] see Tr. at 267. The ALJ also recognized the teacher's observation that Claimant "is often off task and off topic." Tr. at 29 (citation omitted); see Tr. at 267.

In assessing Claimant's limitations in attending and completing tasks, the ALJ acknowledged the teacher's opinions that Claimant has "a very serious problem working without distracting others" and a "serious problem with focusing long enough to finish assigned activities[,] refocusing to task when necessary[,] completing class/homework assignments[, and] working at reasonable pace/finishing on time." Tr. at 30; see Tr. at 268. The ALJ correctly set out the teacher's opinions that Claimant has "an obvious problem carrying out multi-step instructions[,] waiting to take turns[, and] completing work accurately"; that he has "no problem changing from one activity to another without being disruptive"; and that he has only "slight problem[s] with the remaining functions of this domain." Tr. at 30; see Tr. at 268. The ALJ also noted the teacher's observation that Claimant "uses a vibrating timer to cue himself back to work." Tr. at 30 (citation omitted); see Tr. at 268.

---

[10]    The ALJ does not specifically state he is summarizing the "Teacher Questionnaire," but he cites Exhibit 15E, which contains the Teacher Questionnaire. Tr. at 29; see Tr. at 266-79 (Exhibit 15E). The ALJ also indicates the opinions are those of Ms. Kern, Tr. at 29, but as noted above, although Ms. Kern signed the questionnaire, it was Plaintiff's English language arts teacher who actually completed the questionnaire. See Tr. at 273. This inaccuracy in the ALJ's Decision does not change the undersigned's recommendation.

In evaluating Claimant's limitations in interacting and relating with others, the ALJ noted the teacher's opinions that although Claimant has a "serious problem with expressing anger appropriately," he has "no problems with relating experiences and telling stories and using adequate vocabulary and grammar to express thoughts/ideas in general, every day conversation"; and he has only "a slight problem with following rules, respecting/obeying adults[,] and using language appropriate to the situation and listener." Tr. at 31 (citation omitted); see Tr. at 269. As noted by the ALJ, the teacher also opined Claimant has "an obvious problem with the remaining functions of this domain." Tr. at 31 (citation omitted); see Tr. at 269.

The ALJ accurately observed that according to the Teacher Questionnaire, Claimant has no limitations in moving and manipulating objects. Tr. at 31; see Tr. at 270.

In assessing Claimant's limitations in caring for himself, the ALJ noted the teacher's observation that Claimant has had to be removed from the classroom "on a few occasions to calm down"; that he "rarely asks for help"; and that "he gets to a boiling point and then acts out when he is already upset." Tr.

at 32; <u>see</u> Tr. at 269.[11] The ALJ also addressed the teacher's opinions that Claimant "has a serious problem with handling frustration appropriately[,] being patient when necessary[,] using good judgment[,] identifying and appropriately asserting emotional needs[, and] responding appropriately to changes in his own mood" and that he "has an obvious problem with knowing when to ask for help." Tr. at 32; <u>see</u> Tr. at 271. As noted by the ALJ, the teacher also opined that Claimant has only "a slight problem with using appropriate coping skills to meet daily demands" and that he has "no problems with the remaining functions of this domain." Tr. at 32; <u>see</u> Tr. at 271. The ALJ noted that according to the Teacher Questionnaire, Claimant "has demonstrated self-injurious behavior on frequent occasions"; he "often sleeps in class"; and "[s]ometimes, he threatens to harm himself." Tr. at 32 (citation omitted); <u>see</u> Tr. at 271-72. The teacher actually stated that Claimant has "demonstrated self[-]injurious behavior on <u>in</u>frequent occasions." Tr. at 271 (emphasis added). This inaccuracy does not change the undersigned's recommendation.

---

[11]    Although the ALJ discusses these opinions when evaluating Claimant's limitations in caring for himself, these opinions are contained in the portion of the Teacher Questionnaire addressing Claimant's limitations in interacting and relating with others. <u>See</u> Tr. at 269. The undersigned finds no error as these opinions also go to Claimant's ability to care for himself.

### 3.   Ms. Walls's Evaluation

Plaintiff argues that in finding medical improvement, the ALJ "mischaracterized" Ms. Walls's May 2016 evaluation "by citing two minor parts regarding speech therapy and failing to even mention any of the parts supporting ongoing limitations, special accommodations, and difficulty with language." Pl.'s Br. at 17. Plaintiff contends the ALJ also relied on Ms. Walls's evaluation in finding less than marked limitations, even though "her evaluation showed [Claimant] was off task fifty percent of the time, needed a series of special accommodations, and had very elevated levels of autism issues." Id. at 18.

Responding, Defendant asserts that "Plaintiff reviews only a limited set of items from Ms. Walls['s] 2016 report . . . ." Def.'s Mem. at 15. Defendant argues that "the evaluative testing, findings, and Ms. Walls['s] report clearly support the ALJ in finding that [Claimant] did not have marked [limitations] in any functional domain." Id.

In finding medical improvement, the ALJ cited Ms. Walls's evaluation, accurately indicating it states that "[C]laimant was dismissed from Speech Therapy in May 2015" and that "a second evaluation reported [C]laimant did not display a need for Language Therapy." Tr. at 17;[12] see Tr. at 454.

---

[12]    The ALJ did not refer to Ms. Walls by name, but he cited Exhibit 19F, which consists of Ms. Walls's evaluation. Tr. at 17; see Tr. at 454-65 (Exhibit 19F).

The ALJ also addressed Ms. Walls's evaluation when he found less than marked limitations in the domain of acquiring and using information. Tr. at 28. The ALJ accurately noted that Ms. Walls observed Claimant in his classroom "responding to a teacher question indicating a literal understanding of a new vocabulary term"; that he scored in the average range on the Wechsler Intelligence Scale for Children; that he performed more consistently on tasks that were visual in nature; and that he received a Full Scale IQ score of 93, which is average. Tr. at 28-29; see Tr. at 455-56, 462.

The ALJ, in addressing Claimant's limitations in attending and completing tasks, noted Ms. Walls's observations that "[C]laimant appeared distracted; he played with supplies on his desk and used scissors to cut his own hair; he was responsive when approached by the teacher to reiterate directions, though still self-directed." Tr. at 30 (citation omitted); see Tr. at 455.

In the ALJ's assessment of Claimant's limitations in interacting and relating with others, the ALJ recounted Ms. Walls's observation of Claimant "playing tag on the playground with his peers," as well as her report that "[i]n class, [Claimant] interacted with classmates, both by initiating and responding, to social contact." Tr. at 31; see Tr. at 455. The ALJ further noted that Ms. Walls reported that Claimant "did not make eye contact while responding to the observer, while researching on the computer" and that "[h]e reacted to online videos with loud gasps." Tr. at 31 (citation omitted); see Tr. at 455 (noting that

- 22 -

on the day of the evaluation, students were "researching a chosen topic based on their own interest" and that when Ms. Wall asked Claimant "what he was researching, [Claimant] did not make eye contact but he did respond, 'I'm researching ants'").

### 4. Non-Examining State Agency Medical Consultants

Plaintiff argues the ALJ "compounded" the above errors "by assigning great weight to the opinions from non-examining state consultants" regarding the domains of attending and completing tasks and caring for oneself. Pl.'s Br. at 18 (citation omitted).[13] According to Plaintiff, "[t]he opinion of a non-examining physician is entitled to little weight and, taken alone, does not constitute substantial evidence to support an administrative decision." Id. (citation omitted).

Responding, Defendant argues the ALJ adequately assigned great weight to the opinions of the state agency medical consultants because "an opinion from a non-examining physician may be accorded greater weight than opinions from treating physicians, provided the non-examining physician's opinion is supported by the evidence in the record." Def.'s Mem. at 12 (citations omitted).

---

[13]     In arguing the ALJ erred in assigning great weight to the opinions of the state agency medical consultants, Plaintiff cites pages 8 and 11 of the Decision (Tr. at 20, 23), which contain the weight given to these opinions as they relate to the domains of attending and completing tasks and caring for oneself. (These pages contain the ALJ's discussion of whether Claimant's impairments at the time of the CPD functionally equal the Listings. See Tr. at 18-23.) The undersigned thus addresses the ALJ's evaluation of these opinions as they pertain to these domains only.

As noted, four state agency medical consultants reviewed Claimant's file and opined Claimant's impairments do not meet, medically equal, or functionally equal any of the Listings. Two of them, Ira Pinnelas M.O. and Wendy Silver Psy. D, opined in mid-2016 that Claimant has less than marked limitations in the domain of attending and completing tasks and no limitation in the domain of caring for oneself. Tr. at 449-51. The other two state agency medical consultants, William Prather M.D. and David Clay PhD, opined in late 2016 that Claimant has no limitation in the domain of attending and completing tasks and has less than marked limitations in the domain of caring for oneself. Tr. at 471-73.[14]

With respect to the above opinions, the ALJ found gave "great weight" to the opinions of Dr. Pinnelas and Dr. Silver, finding they supported his conclusion that Claimant has less than marked limitations in the domain of

---

[14]    In addition, the state agency medical consultants opined as follows. Dr. Pinnelas and Dr. Silver opined that Claimant has less than marked limitations in the domains of acquiring and using information, interacting and relating with others, and health and physical well-being and that he has no limitation in the domain of moving about and manipulating objects. Tr. at 449-51. Dr. Prather and Dr. Clay opined that Claimant has less than marked limitations in the domains of acquiring and using information, interacting and relating with others, and health and physical well-being and that he has no limitation in the domain of moving about and manipulating objects. Tr. at 471-73. As noted above, Plaintiff apparently does not challenge the ALJ's evaluation as to these opinions.

attending and completing tasks. See Tr. at 20, 30.[15] The ALJ gave "great weight" to the opinions of Dr. Prather and Dr. Clay, finding they supported his conclusion that Claimant has less than marked limitations in the domain of caring for oneself. See Tr. at 23, 32. The ALJ found limitations greater than those opined by Dr. Pinnelas and Dr. Silver in the domain of caring for oneself and than those opined by Dr. Prather and Dr. Clay in the domain of attending and completing tasks.

**C. Analysis**

    **1. The IEP, the Teacher Questionnaire, and Ms. Walls's Evaluation**

Upon due consideration, the undersigned finds that the ALJ adequately considered the IEP, the Teacher Questionnaire, and Ms. Walls's evaluation. These sources' statements and opinions, as a whole, support the ALJ's findings that medical improvement occurred; that Claimant has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for oneself; and that he has no limitations in the domain of moving and manipulating objects. This is not to say that Claimant has no limitations; the administrative transcript shows, and the ALJ found, that Claimant does have problems in

---

[15]    The ALJ does not refer to the state agency medical consultants by name, but he cites Exhibits 18F and 21F, which contain the opinions of Dr. Prather, Dr. Clay, Dr. Pinnelas, and Dr. Silver. See Tr. at 448-53 (Exhibit 18F containing opinions of Dr. Pinnelas and Dr. Silver); Tr. at 470-75 (Exhibit 21F containing opinions of Dr. Prather and Dr. Clay).

certain areas. However, substantial evidence supports the ALJ's finding that these problems do not cause Claimant to have marked or severe limitations in any of the domains. Moreover, as explained below, in finding medical improvement and less than marked limitations, the ALJ also relied on the other evidence of record.

The ALJ noted that school records show Claimant is "doing very well academically . . . ." Tr. at 28. As the ALJ described, a progress report from February 2018 shows Claimant had five A's, one B, and one C. Tr. at 28, 29; see Tr. at 306 (report card showing Claimant had A's in Language Arts (91.25%), Advanced Mathematics (90.08%), "M/J KEYBD" [16] (95.00%), "LRNG" [17] (100.00%), and Science (93.84%); one B in Spanish (86.27%); and one C in World History (71.67%)). The ALJ also accurately observed that school records from 2018 indicate that although Claimant "was below a satisfactory level of mastery" in Science, he "demonstrated a satisfactory level of mastery of the Florida Standards for his grade in English and Math." Tr. at 29; see Tr. at 280-82 (Florida Standards Assessment Score Report).

---

[16]     "M/J KEYBD" appears to refer to keyboard practice. See Tr. at 78 (Claimant testifying he takes "keyboard practice").

[17]     It is unclear to what class "LRNG" refers, but the class's teacher, Ms. Colon, see Tr. at 306, is Claimant's ESE teacher. See Tr. at 490.

The ALJ accurately noted that Claimant's treating records reveal largely normal examinations. Importantly, as the ALJ observed, Claimant's treating neurologist, Dr. Diana Dahan, "has consistently reported essentially normal physical and psychiatric examinations with the exception of mildly limited eye contact and [C]laimant speaking in a loud, impulsive voice." Tr. at 28 (citation omitted); see also Tr. at 17, 21, 25 (ALJ's discussion of Dr. Dahan's treatment notes); e.g., Tr. at 500-01 (March 2017 treatment note indicating Claimant's eye contact was "mildly limited"; he had "good comprehension" and fluent speech with "normal speech pattern"; he was alert and oriented; and his affect and demeanor were "appropriate"); Tr. at 494-96 (November 2017 treatment note indicating Claimant "maintained OK conversation"; eye contact was "minimally limited"; he had "good comprehension" and fluent speech with "normal speech pattern"; he was alert and oriented; and his affect and demeanor were "appropriate"); Tr. at 495-96, 499, 502, 515 (November 2016, March 2017, August 2017, and November 2017 treatment notes indicating Claimant's "cognitive and academic skills are considered average"; he is "above average" in reading and "average" in math; and, "he is doing better academically").

The ALJ also pointed to Claimant's conservative treatment. Specifically, the ALJ accurately observed that Claimant's treatment consists of prescribed medication, Tr. at 28, which has been effective at controlling his ADD symptoms, Tr. at 25. See Tr. at 495, 499, 502, 515 (November 2016, March 2017,

August 2017, and November 2017 treatment notes indicating Claimant's "ADD symptoms are very well controlled" with his medication). As the ALJ noted, Claimant receives therapy through the school but "has not engaged in therapy by a mental health professional for symptoms related to ADD or autism" and "has not presented to an office visit or an emergency department with uncontrollable symptoms." Tr. at 28.

As to the ALJ's failure to assign a weight to the IEP, this is not ground for reversal. Social Security Ruling 06-03P states that an ALJ "generally should explain the weight given to opinions from" non-medical sources (like teachers and other school personnel) "<u>or</u> otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, 2006 WL 2329939, at *6 (emphasis added). Here, the ALJ sufficiently discussed the evidence in the record to allow the undersigned to follow the ALJ's reasoning. In any event, because the opinions contained in the IEP, as a whole, are not inconsistent with the ALJ's Decision, any error in failing to explain the weight assigned to them is harmless.

Further, contrary to Plaintiff's assertion, the ALJ did not mischaracterize Ms. Walls's evaluation report. In finding medical improvement, the ALJ pointed to Ms. Walls's notes regarding Claimant's dismissal from speech therapy and language therapy because these findings are relevant to the question of medical

improvement in these areas. It is clear the ALJ considered Ms. Walls's evaluation report as a whole because, as noted above, he summarized it and relied on it throughout the Decision. <u>See</u> Tr. at 16, 28-31. It cannot be said the ALJ considered only "two minor parts" of Ms. Walls's evaluation and ignored the rest. Pl.'s Br. at 17.

To the extent the ALJ did not discuss every statement and opinion in the IEP, the Teacher Questionnaire, or Ms. Walls's evaluation, "[t]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his [D]ecision, so long as the ALJ's [D]ecision . . . is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [Claimant's] medical condition as a whole." <u>Dyer</u>, 395 F.3d at 1211. As explained above, such a broad rejection of the evidence did not occur here.

Based on the foregoing and having considered the record as a whole, the undersigned finds no error in the ALJ's consideration of the IEP, the Teacher Questionnaire, or Ms. Walls's evaluation.

### 2.   Non-Examining State Agency Medical Consultants

As noted, the ALJ relied on a myriad of evidence to support his conclusions. The ALJ did not rely solely on the state agency medical consultants' opinions, and he actually rejected some their opinions, finding greater limitations. <u>See</u> Tr. at 20-32. The ALJ considered the evidence as a whole and permissibly found that portions of the state agency medical

consultants' opinions were consistent with the evidence. <u>Oldham</u>, 660 F.2d at 1084.

## VI. Conclusion

The ALJ's Decision is supported by substantial evidence. Based on the foregoing, it is

**RECOMMENDED**:

1.      That the Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.      That the Clerk be further directed to close the file.

**RESPECTFULLY RECOMMENDED** in Jacksonville, Florida on February 3, 2021.

JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:

Honorable Anne C. Conway
United States District Judge

Counsel of Record

- 30 -